UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWIN FERNANDEZ and ELIZABETH FERNANDEZ,<br><br>                             Plaintiffs,<br><br>               v.<br><br>POLICE OFFICER SALVATORE SACCO (Shield No. 6969), POLICE OFFICER MICHAEL VOLPICELLA (Shield No. 1155), POLICE OFFICER CHRISTOPHER ENG (Shield No. 15563), POLICE OFFICER RICHARD DIGANGI (Shield No. 16130), POLICE OFFICER JOHN DOES 1-4, and THE CITY OF NEW YORK,<br><br>                             Defendants. | Case No. 10-CV-1624 (ERK) (RML)<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COME NOW THE PLAINTIFFS, Edwin Fernandez and Elizabeth Fernandez, by their attorney, Steven M. Warshawsky, for their first amended complaint against the defendants, and alleging as follows:

### NATURE OF THE ACTION

1.     The Fourth Amendment of the U.S. Constitution provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated." The U.S. Supreme Court has explained that "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 191 (1990) (citation omitted). The Fourth Amendment applies to the states through the Fourteenth Amendment of the U.S. Constitution.

2. This is a civil rights action under 42 U.S.C. § 1983 arising from the unconstitutional search of the plaintiffs' home by officers of the New York City Police Department on December 19, 2009. The search was conducted without a warrant, without consent, and in the absence of exigent circumstances. The defendants' actions violated the plaintiffs' clearly established rights under the Fourth Amendment. Under the circumstances of this case, it was not objectively reasonable for the defendants to believe that their search of the plaintiffs' home was lawful. As this case illustrates, the City of New York and the NYPD have failed to train their police officers to respect the rights of citizens under the Fourth Amendment. The plaintiffs are entitled to compensatory damages for injuries they suffered as a result of the defendants' unconstitutional conduct, punitive damages to punish and deter the defendants from engaging in similar unconstitutional conduct in the future, and statutory attorney's fees and costs.

**PARTIES**

3. Plaintiff Edwin Fernandez is an American citizen and resides at 288 Ada Drive, Staten Island, New York, 10314. Mr. Fernandez is employed by U.S. Customs and Border Protection, where he has worked in various law enforcement roles since 1979. At the time of the events in this case, he was 54 years old.

4. Plaintiff Elizabeth Fernandez is an American citizen and resides at 288 Ada Drive, Staten Island, New York, 10314. At the time of the events in this case, she was 51 years old.

5. Mr. Fernandez and Mrs. Fernandez are married and have three children, two daughters and one son. Mrs. Fernandez' elderly mother (who was 82 years old at the time of the events in this case) lives with them.

6. Defendant Police Officer Salvatore Sacco (Shield No. 6969) is an employee of the New York City Police Department. Upon information and belief, his place of business is the NYPD 120th Precinct located at 78 Richmond Terrance, St. George, New York, 10301. Officer Sacco personally participated in the unconstitutional search of the plaintiffs' residence on December 19, 2009. At all relevant times, Officer Sacco was acting under color of state law and in the scope of his employment with the NYPD. Officer Sacco is being sued in his individual capacity, pursuant to 42 U.S.C. § 1983.

7. Defendant Police Officer Michael Volpicella (Shield No. 1155) is an employee of the New York City Police Department. Upon information and belief, his place of business is the NYPD Transit District 33 located at 2399 Fulton Street, Brooklyn, New York, 11233. Officer Volpicella personally participated in the unconstitutional search of the plaintiffs' residence on December 19, 2009. At all relevant times, Officer Volpicella was acting under color of state law and in the scope of his employment with the NYPD. Officer Volpicella is being sued in his individual capacity, pursuant to 42 U.S.C. § 1983.

8. Defendant Police Officer Christopher Eng (Shield No. 15563) is an employee of the New York City Police Department. Upon information and belief, his place of business is the NYPD 120th Precinct located at 78 Richmond Terrance, St. George, New York, 10301. Upon information and belief, Officer Eng personally participated in the unconstitutional search of the plaintiffs' residence on December 19, 2009. At all relevant times, Officer Eng was acting under color of state law and in the scope of his employment with the NYPD. Officer Eng is being sued in his individual capacity, pursuant to 42 U.S.C. § 1983.

9. Defendant Police Officer Richard DiGangi (Shield No. 16130) is an employee of the New York City Police Department. Upon information and belief, his place of

business is the NYPD 120th Precinct located at 78 Richmond Terrance, St. George, New York, 10301.  Upon information and belief, Officer DiGangi personally participated in the unconstitutional search of the plaintiffs' residence on December 19, 2009.  At all relevant times, Officer DiGangi was acting under color of state law and in the scope of his employment with the NYPD.  Officer DiGangi is being sued in his individual capacity, pursuant to 42 U.S.C. § 1983.

        10. Defendants Police Officer John Does 1-4 are employees of the New York City Police Department.  Their identities and places of business presently are unknown.  These defendants personally participated in the unconstitutional search of the plaintiffs' residence on December 19, 2009.  At all relevant times, these defendants were acting under color of state law and in the scope of their employment with the NYPD.  They are being sued in their individual capacities, pursuant to 42 U.S.C. § 1983.

        11. Defendant City of New York is a municipality of the State of New York.  The Corporation Counsel of NYC is Michael A. Cardozo.  The main office of the Corporation Counsel is located at 100 Church Street, New York, New York, 10007.  The NYPD is an agency or instrumentality of the City of New York.  The City of New York is being sued in its municipal capacity, pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978), and its progeny.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, insofar as this action arises under the Constitution and civil rights laws of the United States.

13. This Court has venue over this action pursuant to 28 U.S.C. § 1391(b)(2), insofar as a substantial part of the events or omissions giving rise to this action occurred in this district.

14. There are no administrative exhaustion requirements for bringing the present civil rights action under 42 U.S.C. § 1983.

15. This first amended complaint is being filed within the three-year statute of limitations for claims brought under 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

16. The events in this case took place on December 19, 2009, in the morning. It was Saturday. Edwin and Elizabeth were inside their home at 288 Ada Drive, along with their two younger children (a teenage son and a teenage daughter) and Elizabeth's mother. The plaintiffs were attending to various domestic chores that morning and peaceably going about their business. They were not making loud noises. They were not fighting. They were not engaging in any criminal activity. They were not disturbing the peace.

17. The plaintiffs live in a small, two-family house on a residential street in a middle-class neighborhood. The house is owned by William and Beverly Fonseca, who live in West Islip, New York. The house is divided into two apartments. The plaintiffs rent the front apartment, which faces the street. The rear apartment, which is accessed through a side door near the back of the house, is rented by an unrelated person. Upon information and belief, the

name of the person who was renting the rear apartment at the time of the events in this case was Crystal Roman.

18. Around 9:00 a.m. that morning, William and Beverly Fonseca arrived at the house to take care of some routine maintenance tasks. They went inside the plaintiffs' apartment and greeted the plaintiffs. They did not see or hear any indications that the plaintiffs had been fighting that morning. William helped Edwin move some furniture in Elizabeth's mother's room, which was located on the ground floor of the plaintiffs' apartment. The other rooms of the plaintiffs' apartment were located on the second floor of the house.

19. Around 9:20 a.m., there was a knock at the plaintiffs' front door. Edwin answered the door. Outside was a large group of police officers, approximately seven in total, including Officer Sacco, Officer Volpicella, Officer Eng, and Officer DiGangi. One of the police officers asked Edwin if he had called 911 that morning. Edwin said no. The officer then told Edwin that someone called 911 and reported a fight at this address. Edwin told the officer that it was not them and that no one had been fighting inside their apartment. The police officers then went around the side of the house to the rear apartment. Edwin closed the front door.

20. The police officers knocked on the side door, which was answered by an unidentified woman. The woman later was identified through telephone records as a person named Lisa Roth. One of the police officers (upon information and belief, Officer Sacco) asked Ms. Roth if there was a dispute going on inside her apartment. She said no. The officer then asked her if she had called 911. She said no. According to Ms. Roth's subsequent interview by the Civilian Complaint Review Board (on January 27, 2010), Ms. Roth "volunteered" to the police officers that she had been awakened around 8:00 a.m. that morning by "a loud ruckus upstairs," that she had heard "loud voices," and that "it sounded like an argument." The CCRB

-6-

investigator then asked Ms. Roth if she had told the police officers that she "heard fighting or any violence?" "No, no, no," Ms. Roth answered. She only told the police officers that "it sounded like they were having a dispute."

21. According to the NYPD Sprint Report (which documents the 911 call made in this case), an anonymous 911 call was made at approximately 9:00 a.m. on December 19, 2009, concerning 288 Ada Drive, from a telephone number later determined to belong to Lisa Roth. The caller said she was "a neighbor" but declined to give her name. (During her CCRB interview, Ms. Roth repeatedly denied making the 911 call.) The caller reported to the 911 dispatcher that "there is a lot of commotion coming from a house; it sounds like a fight." The caller said it sounded "like a group of people." She told the dispatcher that the people had been arguing for 10 to 15 minutes. The caller told the dispatcher that she did not know the number or description of the persons involved, she did not know if any weapons were involved, and she did not know if anyone was injured. The caller spoke in calm manner. She did not speak in an anxious, urgent, or panicked manner, she did not say it was an emergency, and she did not ask the police to rush to the scene.

22. The 911 call then was relayed by the dispatcher to the police officers. The dispatcher told the police officer who answered the call (whose identity is not known at this time) that there was "a large group of people having a dispute in a private house" at 288 Ada Drive and that there were "unknown weapons" and "unknown injuries." Nothing else. Upon information and belief, the dispatcher did not advise the police officers that this 911 call should be treated as an emergency. The police officers then responded to the scene about 20 minutes later, as described above and continuing below.

23. After speaking with Ms. Roth (whose name was not known to the police officers at the time), the police officers returned to the plaintiffs' front door and rang the doorbell. Edwin answered the door. He was standing in the ground-floor vestibule of the plaintiffs' apartment. At that time, William Fonseca was inside the apartment standing near Edwin. Beverly Fonseca was outside the apartment in the front yard. Elizabeth had come down the stairs and also was standing near Edwin. All four persons could see, and be seen by, the police officers. All four persons were acting in a calm manner. None of them showed any signs of distress, violence, or injuries. There was a screen door separating the police officers from the inside of the plaintiffs' apartment.

24. One of the police officers again told Edwin about the 911 call. Edwin and Elizabeth both said that everything was fine, that no one had been fighting inside their apartment, and that they did not need the police. Ignoring what the plaintiffs were telling them, Officer Sacco and another officer insisted that "we needed to come in to check out that nobody inside was injured." Edwin expressly refused, telling them, "you're not coming into my house." Edwin did not shout or act in a threatening manner. When the officers persisted in trying to enter the plaintiffs' apartment, Edwin asked them if they had a search warrant. This enraged Officer Sacco, who told Edwin, "no, we don't need one"; Officer Sacco then opened the screen door and forced his way into the plaintiffs' apartment. The other officers, including Officer Volpicella, Officer Eng, and Officer DiGangi, followed him inside. This was a blatant and unjustified violation of the plaintiffs' Fourth Amendment rights.

25. The conversation at the front door lasted only a few minutes. During this time, the police officers did not see or hear any person inside the apartment who was in distress, injured, or in need of emergency assistance. They did not see or hear any evidence of fighting or

violence inside the apartment. They did not see or hear any evidence of criminal activity inside the apartment.

26. When the police officers started entering the apartment, Edwin and Elizabeth repeatedly told them to leave, telling them that they did not have permission to enter their home and that what they were doing was illegal. In response, Officer Sacco physically pushed Edwin to the side, pinned him against the wall with his arm, screamed at him to "move out of the fucking way!" and threatened to arrest him. This was an egregious and malicious abuse of power.

27. One of the police officers (upon information and belief, Officer Sacco) also grabbed Elizabeth and tried to prevent her from accompanying the police officers as they searched the apartment. When Elizabeth tried to show Edwin's U.S. Customs Canine Enforcement Officer shied in lucite (a memento of his former service in that unit) to Officer Sacco, Officer Sacco told her to "get that shit out of my face!" Throughout the incident, Officer Sacco acted in an arrogant, aggressive, and unprofessional manner.

28. The police officers remained inside the plaintiffs' home for approximately 5-10 minutes. They conducted a visual inspection of every room in the apartment, including the plaintiffs' children's rooms and Elizabeth's mother's room. Not surprisingly, they did not find any person inside the apartment who was in distress, injured, or in need of emergency assistance. They did not find any evidence of fighting or violence inside the apartment. They did not find any evidence of criminal activity inside the apartment.

29. During the incident, the plaintiffs repeatedly asked Officer Sacco for his name and badge number. Officer Sacco refused to give them this basic information, until the plaintiffs had followed him outside the house and were going to write down the number of his

-9-

patrol car. Officer Sacco then turned around, opened his uniform jacket, and showed his badge to the plaintiffs. Edwin told Officer Sacco that he was going to report him to Internal Affairs. Officer Sacco scoffed at Edwin, told him "you ain't shit," then drove off in his patrol car. All of the police officers departed the scene at that time.

30. Later that same day, Edwin telephoned a complaint about the incident to the Civilian Complaint Review Board. Edwin told the CCRB that there had not been any fighting inside the plaintiffs' apartment that morning; that "somebody made a false complaint" about the plaintiffs; that the police officers "arrived at my house"; that Officer Sacco "forced himself into my house" along with the other police officers; and that Officer Sacco told him to "get the fuck out of the way" and threatened to arrest him.

31. The present lawsuit was filed on April 12, 2010.

## COUNT ONE: UNCONSTITUTIONAL SEARCH OF PLAINTIFFS' HOME
### (Officer Sacco, Officer Volpicella, Officer Eng, Officer DiGangi)

32. The plaintiffs repeat and re-allege Paragraphs 1-31 above.

33. Officer Sacco, Officer Volpicella, Officer Eng, and Officer DiGangi, acting under color of state law, violated the plaintiffs' rights under the Fourth Amendment when they entered and searched the plaintiffs' home without a warrant, without consent, and in the absence of exigent circumstances.

34. The defendants did not have a warrant to search the plaintiffs' home.

35. The defendants did not have consent to search the plaintiff's home.

36. The defendants did not have exigent circumstances to search the plaintiffs' home.

37. The plaintiffs' rights under the Fourth Amendment were clearly established at the time of the search.

38. It was not objectively reasonable for the defendants to believe that their search of the plaintiffs' home did not violate the plaintiffs' rights under the Fourth Amendment.

39. The defendants acted with intentional, knowing, callous, and/or reckless indifference to the plaintiffs' rights under the Fourth Amendment when they entered and searched the plaintiffs' home.

40. As a result of the defendants' unconstitutional search of their home, the plaintiffs have suffered mental anguish, emotional distress, embarrassment, humiliation, and other non-economic injuries, for which they are entitled to an award of compensatory damages.

41. The plaintiffs are entitled to an award of punitive damages to punish the defendants for their unconstitutional conduct and to deter them from engaging in similar unconstitutional conduct in the future.

## COUNT TWO:  UNCONSTITUTIONAL SEARCH OF PLAINTIFFS' HOME
**(Police Officer John Does 1-4)**

42. The plaintiffs repeat and re-allege Paragraphs 1-41 above.

43. Police Officer John Does 1-4, acting under color of state law, violated the plaintiffs' rights under the Fourth Amendment when they entered and searched the plaintiffs' home without a warrant, without consent, and in the absence of exigent circumstances.

44. The defendants did not have a warrant to search the plaintiffs' home.

45. The defendants did not have consent to search the plaintiff's home.

46. The defendants did not have exigent circumstances to search the plaintiffs' home.

47. The plaintiffs' rights under the Fourth Amendment were clearly established at the time of the search.

48. It was not objectively reasonable for the defendants to believe that their search of the plaintiffs' home did not violate the plaintiffs' rights under the Fourth Amendment.

49. The defendants acted with intentional, knowing, callous, and/or reckless indifference to the plaintiffs' rights under the Fourth Amendment when they entered and searched the plaintiffs' home.

50. As a result of the defendants' unconstitutional search of their home, the plaintiffs have suffered mental anguish, emotional distress, embarrassment, humiliation, and other non-economic injuries, for which they are entitled to an award of compensatory damages.

51. The plaintiffs are entitled to an award of punitive damages to punish the defendants for their unconstitutional conduct and to deter them from engaging in similar unconstitutional conduct in the future.

## COUNT THREE:  UNCONSTITUTIONAL SEARCH OF PLAINTIFFS' HOME
**(City of New York)**

52. The plaintiffs repeat and re-allege Paragraphs 1-51 above.

53. Upon information and belief, the unconstitutional search of the plaintiffs' home was ordered and/or conducted pursuant to an officially promulgated policy sanctioned or ordered by the New York City Police Department and the City of New York.

54. Upon information and belief, the unconstitutional search of the plaintiffs' home was ordered and/or conducted pursuant to a pervasive custom or practice of the New York City Police Department that has been approved by the City of New York and/or that the City of New York is or should be aware of.

55.     Upon information and belief, the unconstitutional search of the plaintiffs' home was authorized by one or more high-ranking NYPD officials who have final policymaking authority in this area.

56.     Upon information and belief, the City of New York was deliberately indifferent to the plaintiffs' constitutional rights by failing to train and supervise the NYPD officers who ordered and/or conducted the unconstitutional search of the plaintiffs' home.

57.     As a result of the City of New York's culpable conduct in connection with the unconstitutional search of the plaintiffs' home, the plaintiffs have suffered mental anguish, emotional distress, embarrassment, humiliation, and other non-economic injuries, for which they are entitled to an award of compensatory damages against the City of New York.

## **PRAYER FOR RELIEF**

WHEREFORE, the plaintiffs respectfully request that this Court enter an order:

A.     Declaring the search complained of herein to be in violation of the plaintiffs' rights under the Fourth Amendment of the U.S. Constitution;

B.     Entering judgment in favor of the plaintiffs on Counts 1-3 above;

C.     Awarding each of the plaintiffs no less than $100,000 in compensatory damages for the unconstitutional search of their home;

D.     Awarding the plaintiffs no less than $50,000 in punitive damages from each of the individual defendants who are liable for the unconstitutional search of their home;

E.     Awarding the plaintiffs attorney's fees and costs, pursuant to 42 U.S.C. § 1988, Fed. R. Civ. P. 54(d), and all other applicable laws and rules; and

      F.      Granting such other and further relief as the Court deems just and proper.

Dated: November 1, 2011
       New York, New York

                        Respectfully submitted,

                        *Steven M. Warshawsky*

By:   _____
                        STEVEN M. WARSHAWSKY (SW 5431)
                        Empire State Building
                        350 Fifth Avenue, 59th Floor
                        New York, NY  10118
                        Tel:  (212) 601-1980
                        Fax:  (212) 601-2610
                        Email:  smw@warshawskylawfirm.com
                        Website:  www.warshawskylawfirm.com